INDIANA CROP IMPROVEMENT ASSOCIATION, INC., PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 1511–79X.     Filed February 26, 1981.

*Mark I. Lillianfeld* and *Carl W. Kloepfer*, for the petitioner. *Larry N. Johnson*, for the respondent.

OPINION

WILBUR, *Judge*: Respondent failed to determine whether petitioner qualifies for exemption from Federal income tax under section 501(c)(3).[1] Pursuant to section 7428, petitioner has invoked jurisdiction of this Court for declaratory judgment. The statutory prerequisites for declaratory judgment have been satisfied.[2] The issue for our decision is whether petitioner is

---

[1]Unless otherwise indicated, all statutory references are to the Internal Revenue Code of 1954 as amended.

[2]Petitioner is the organization whose qualification is at issue (sec. 7428(b)(1)), and petitioner exhausted its administrative remedies (sec. 7428(b)(2)). Petitioner submitted its application for recognition of exemption under sec. 501(c)(3) to the Office of the Internal Revenue Service in Cincinnati, Ohio, on Mar. 30, 1978. On Sept. 12, 1978, respondent sent to petitioner a proposed

organized and operated exclusively for charitable, educational, and scientific purposes within the meaning of section 501(c)(3).

This case was submitted for decision on a stipulated administrative record under Rules 122 and 217, Tax Court Rules of Practice and Procedure. The stipulated record is incorported herein by this reference.

Petitioner was originally organized as the Indiana Corn Growing Association in March of 1900. Petitioner was reorganized under Indiana law as a nonprofit agricultural association under the name of Indiana Crop Improvement Association, Inc., on February 21, 1956. Petitioner's principal place of business is in Lafayette, Ind. Petitioner was recognized as exempt from Federal income tax as an agricultural organization described in section 501(c)(5) in September 1958.

Petitioner's amended articles of incorporation provide the following:

### ARTICLE II—PURPOSE

The purpose or purposes for which the Association is formed are: exclusively for charitable, educational and scientific purposes within the meaning of Section 501(c)(3) of the United States Internal Revenue Code of 1954 as the same may be amended, including, for such purposes the making of distributions to organizations that qualify as exempt organizations under Section 501(c)(3) of the Internal Revenue Code of 1954 as the same may be amended, and in particular: to encourage the improvement of production of corn, soybeans, small grains, and other crops by attention to better seed selection, recent genetic improvements, use by best known agronomic production practices and such other means as may be necessary to bring about desired improvement in Indiana's field crops.

The Association shall also conduct such seed certification activities as may be delegated to it, and shall carry on such other activities as yield contests, educational displays, etc., in the field of crop improvement and education as the Board of Directors shall deem advisable.

Petitioner's primary activity consists of the certification of crop seed within the State of Indiana. Petitioner also spends a substantial amount of time and resources conducting scientific

---

adverse determination. On Feb. 5, 1979, prior to the issuance of a final determination letter but more than 270 days after the request for such determination was made, petitioner filed its petition in the Tax Court requesting a determination that it qualifies as an organization described under sec. 501(c)(3). See sec. 7428(b)(2), and Rule 217(c)(2), Tax Court Rules of Practice and Procedure.

research in seed technology and providing instruction in modern seed technology in conjunction with Purdue University.

The primary objective of seed certification is to maintain the genetic purity and identity of seed from the time it leaves the seed producer until it is available to the purchaser. Seed which has been labeled as "certified" assures the consumer that the marketed seed has met minimum standards established under State and Federal law for genetic purity and identity, and that it has been tested by variety to match soil, climatic, and disease conditions. Generally, both certified and noncertified seed may be sold to consumers. However, the Federal Seed Act, Pub. L. 354, 53 Stat. 1275, 7 U.S.C. sec. 1551 et seq. (1973), and the Indiana Seed Certification Act, Ind. Code Ann. sec. 15-4-6-1 et. seq. (Burns 1973), prohibit and impose penalties upon anyone selling seed that is represented as "certified" unless it has been so labeled by the appropriate seed certifying agency.

The State of Indiana does not have a department of agriculture to regulate agricultural products within the State. Instead, agricultural regulatory functions have been delegated by law to Purdue University and the director of the Purdue University Agricultural Experiment Station. Since 1935, the Purdue University Agricultural Experiment Station has delegated the function of seed certification to petitioner in accordance with the Indiana Seed Certification Act. Thus, petitioner is recognized as the official seed certifying agency for Indiana, in charge of enforcing the standards and procedures established in the regulations under the Federal Seed Act on behalf of the Agricultural Marketing Service of the U.S. Department of Agriculture. In several other States, this seed certification activity is performed directly by State governmental agencies.

The certification of seed by petitioner is available to any seed producer who files an application with petitioner, pays a certification fee, and follows petitioner's guidelines which permit proper testing procedures. Certification fees charged by petitioner are based upon the cost of the testing services performed, which include field inspections and laboratory analysis. Anyone interested in crop improvement may become a member of petitioner upon payment of a prescribed membership fee. In addition, any seed producer who applies for seed certification must become an annual or life member of petitioner.

The process of seed certification is an impartial one. If the submitted seed meets minimum certification standards, petitioner labels it certified. If it fails to meet minimum standards, it cannot be sold as certified seed. Petitioner annually publishes a seed directory, made available to the public, which lists sources of certified seed throughout the State.

Petitioner conducts scientific research programs in various aspects of seed technology including seed quality, disease control, and improved testing procedures. Some of the research is conducted with Purdue University on a cooperative basis. Information obtained through research is made available to the public through the dissemination of information at educational meetings and seminars attended by petitioner's staff and through newsletters.

By agreement, petitioner cooperates with Purdue University in an educational program to promote the use of better crop seeds and plant parts on farms in Indiana. Petitioner conducts adult education classes throughout the State as well as an annual educational seminar on modern seed technology. Petitioner's technical staff is also available to vocational agricultural teachers and county agents for conducting educational programs within schools and county extension offices. Petitioner maintains an extensive lending library in seed technology which is available for use by the public.

Petitioner is closely connected with Purdue University because of their joint responsibility for the advancement of adult education within the State of Indiana and because of the delegation to petitioner of seed certification activities by the director of the Purdue University Agricultural Experiment Station. The chairman of the department of agronomy, the chairman of the department of botany and plant pathology, and a member of the staff of Purdue University chosen by the director of the Purdue University Agricultural Experiment Station serve as ex officio voting members of petitioner's board of directors. In addition, a person designated by the director of Purdue University Agricultural Experiment Station serves on petitioner's executive committee. Petitioner's employees are designated as "associate members" of the Purdue University staff for the purpose of receiving university staff benefits.

The issue for our decision is whether petitioner is organized and operated exclusively for charitable, scientific, and educa-

tional purposes within the meaning of section 501(c)(3). Petitioner argues that its seed certification activities are in furtherance of a charitable purpose because by performing such services, it lessens the burdens of Government; that all other activities are in furtherance of educational and scientific purposes within the meaning of section 501(c)(3); and that all of its activities serve a public rather than a private interest. Conversely, respondent maintains that petitioner fails to qualify as a section 501(c)(3) organization because its seed certification activities have not been recognized as a burden of Government; that its scientific activities are of a type ordinarily conducted incident to commercial operations and serve private interests; and that its educational activities benefit primarily the private interests of commercial seed producers and commercial farmers. Because no final determination letter was issued, respondent bears the burden of proof. Rule 217(c)(2)(ii), Tax Court Rules of Practice and Procedure. We agree with petitioner that it is organized and operated exclusively as a charitable, scientific, and educational organization within the meaning of section 501(c)(3).

Respondent first argues that seed certification is not a recognized governmental activity and that the primary purpose of petitioner's seed certification program is to promote the economic interests of commercial seed producers and commercial farmers. These contentions are unsupported by the administrative record. Petitioner has certified seed in Indiana continuously since the passage of the Indiana Seed Act in 1935 pursuant to the express delegation of that function by the Purdue University Agricultural Experiment Station in accordance with statutory authority. See Ind. Code Ann. sec. 15-4-6-2 (Burns 1973). As the official seed certifying agency for the State of Indiana, petitioner performs a service that is recognized under Federal and State law, and which is generally performed in other States directly by a State instrumentality. There is no question that the reason for the passage of the laws requiring official labeling for "certified" seed is to protect the purchasing public—generally farmers and gardeners—from perceived abuses in the sale of agricultural and vegetable seed which is impure, mislabeled, or adulterated. See S. Rept. 1590, to accompany H.R. 2160 (Pub. L. 581), 85th Cong., 2d Sess. (1958), reprinted in 1958 U.S. Code Cong. & Adm. News 3221. As the official seed certifying agency for Indiana, petitioner directly assists the U.S. Department of

Agriculture in enforcing the standards and procedures established in the regulations under the Federal Seed Act within the State, and provides a public service to Indiana which the State legislature clearly considers to be necessary and appropriate. By performing this recognized governmental function, petitioner lessens the burdens of Government and is "charitable" within the meaning of section 501(c)(3). See *Professional Standards Review v. Commissioner,* 74 T.C. 240 (1980).

Respondent next argues that petitioner's research activities are of a type ordinarily carried on as an incident to commercial operations and principally serve private interests. We do not agree. The seed certification research and testing performed by petitioner does not constitute "ordinary testing and inspection of materials or products" which under the regulations fail to qualify as "scientific research" for the purposes of section 501(c)(3). See sec. 1.501(c)(3)–1(d)(5)(ii), Income Tax Regs. Indeed, it was because this kind of testing was not performed by seed producers that Congress and the Indiana legislature felt the need to pass seed certification laws to protect the purchasing public.

The scientific research conducted by petitioner is either pursuant to its delegated authority as the official seed certification agency for the State of Indiana or in conjunction with Purdue University, the designated State agency for agricultural research and experimentation. See Ind. Code Ann. secs. 15–4–2–3 and 15–4–2–4 (Burns 1973). This research is totally dissimilar to that undertaken in *Underwriters' Laboratories, Inc. v. Commissioner,* 135 F.2d 371 (7th Cir. 1943), affg. 46 B.T.A. 464 (1942), cert. denied 320 U.S. 756 (1943), where research conducted by a corporation organized by fire insurance companies to investigate causes of fire losses was held to be for business rather than scientific purposes.[3] Furthermore, petitioner's scientific research is carried on for public rather than private interests because the research is performed "for a state or political subdivision

---

[3]Respondent directs our attention to two revenue rulings, Rev. Rul. 68–373, 1968–2 C.B. 206, and Rev. Rul. 74–426, 1978–2 C.B. 175, for an explanation of his conclusion that petitioner's seed certification activities are of a type ordinarily carried on as an incident to commercial operation. But we need not pass on the viewpoint expressed in those rulings, for the organizations described are different from petitioner in that their testing activities were not a part of a legislated Federal and State program, and therefore, they were not testing pursuant to governmental authority and guidelines.

thereof," because the results of the research "are made available to the public on a nondiscriminatory basis," and because the research is directed toward benefiting the public. See sec. 501(c)(3)–1(d)(5)(iii), Income Tax Regs., and the examples thereunder.

Respondent's final argument is that petitioner fails to qualify under section 501(c)(3) because its educational activities primarily benefit the business interests of commercial seed producers and commercial farmers and only incidentally benefit the public. Again, we do not agree. Petitioner conducts educational programs throughout the State in conjunction with Purdue University on good farm management through the use of modern seed technology. The adult education classes, annual seminar, newsletter, and lending library are available to anyone interested in current seed technology. The fact that the majority of persons interested in seed technology may well come from the agricultural community does not mean that farmers and gardeners are not an important part of the general public or that the classes serve private interests. The Indiana legislature has explicitly declared agricultural research and consumer education to be in the interest of the State. Ind. Code Ann. secs. 15–4–2–2 and 15–4–2–3 (Burns 1973). We find that petitioner's educational activities serve to instruct individuals for the purpose of improving their capabilities as well as to instruct the public on subjects beneficial to the individual and the community. See sec. 1.501(c)(3)–1(d)(3), Income Tax Regs.

For the above reasons, we find that petitioner is organized and operated exclusively for charitable, educational, and scientific purposes within the meaning of section 501(c)(3).

*An appropriate order will be issued.*