PUBLIC INDUSTRIES, INC., Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Public Industries, Inc. v. Commissioner
Docket No. 26847-88X
United States Tax Court
T.C. Memo 1991-3; 1991 Tax Ct. Memo LEXIS 3; 61 T.C.M. (CCH) 1626; T.C.M. (RIA) 91003; January 8, 1991, Filed *3 Decision will be entered for the respondent. John E. Kenealy (an officer), for the petitioner. Thomas M. Rath, for the respondent. TANNENWALD, Judge. TANNEWALD MEMORANDUM OPINION TANNENWALD, Judge: Respondent denied petitioner's application for recognition as a tax-exempt organization under section 501(c)(3). [1] Having exhausted its administrative remedies, petitioner is before this Court, pursuant to section 7428, seeking a declaratory judgment as to the correctness of respondent's action. The sole issue for decision is whether petitioner qualifies as a tax-exempt organization within the meaning of section 501(c)(3). This case was submitted under Rule 122. The evidentiary facts and representations contained in the administrative record are presumed to be true for the purpose of this proceeding. Petitioner was incorporated *4 on January 7, 1985, under the laws of Michigan. Petitioner's articles of incorporation state its corporate purpose as follows: Promote the concept of job creation, training, and involvement for purpose of rehibilitation [sic] and reduction of cost to society flowing from unemployment.
In order to comply with the organizational test of section 501(c)(3), petitioner's articles of incorporation were amended on April 9, 1985, to include the following additional provisions: 1. That PUBLIC INDUSTRIES INC. is organized exclusively for the purposes set forth in section 501(c)(3) of the Internal Revenue Code of U.S.
2. That PUBLIC INDUSTRIES INC. will not carry on any activities not permitted to be carried on by an organization exempt under section 501(c)(3) of the U.S. Internal Revenue Code. 3. That upon dissolution of PUBLIC INDUSTRIES INC., any remaining assets will be distributed to another organization that is exempt under section 501(c)(3) of the Internal Revenue Code. 4. PUBLIC INDUSTRIES INC. is organized exclusively for charitable, [sic] religious, eductional, [sic] prisoner eductation [sic] and rehibilitation, [sic] job creation, and scientific *5 purposes, including, for such purposes, the making of distributions to organizations that qualify as exempt organizations under section 501(c)(3) of the Internal Revenue Code of 1954 (or corresponding provision of any future United States Internal Revenue Law.). 5. No part of the net earnings of the corporation shall inure to the benefit of, or be distributable to its members, trustees, officers, or other private persons except that the corporation shall be authorized and empowered to pay reasonable compensation for services rendered and to make payments and distributions in furtherance of the purposes set forth in paragraph above and origonal [sic] Articles. No substantial part of the activities of the corporation shall be the carrying on of propoganda, [sic] or otherwise attempting to influence legislation, and the corporation shall not participate in, or intervene in (including the publishing or distribution of statements) any political campaign on behalf of any candidate for public office[.] Notwithstanding any other provision of these articles, the corporation shall not carry on any other activities not permitted to be carried on (a) by a corporation exempt from federal *6 income tax under section 501(c)(3) of the Internal Revenue Code of 1954 (or the corresponding provision of any future United States Internal Revenue Law.). 6. Upon the dissolution of the corporation any remaining assets will be distributed to another organization that is exempt under section 501(c)(3) of the Internal Revenue Code. Any assets not so disposed of shall be disposed of by the Court of Common Pleas of the county in which the office of the corporation is then located exclusively for such purpose or to such organization or organizations as said Court shall determine which are organized and operated exclusively for such purposes.
Petitioner was incorporated by John E. Kenealy, and its board of directors and officers include Mr. Kenealy as executive director and president. Federal Prison Industries, Inc. (Prison Industries), a U.S. Government corporation, was established by Congress in 1934 to provide training and employment for inmates at Federal correctional institutions. See 18 U.S.C. secs. 4121-4128 (1988). Prison Industries is financially self-sufficient. It not only provides employment and training but also pays inmates modest compensation for working *7 in its factories and supports a portion of the cost of their vocational training. Under 18 U.S.C. section 4122(a), Prison Industries' sales are to the departments or agencies of the United States and not to the public in competition with private enterprise. As of October 1984, Michigan State Industries (Michigan Industries) was a $ 13 million operation employing nearly 1,000 prisoners at five State prisons. The goal of Michigan Industries is to provide meaningful employment and opportunities to learn usable skills for a significant number of State prisoners. Petitioner states that it will perform as a buyer of goods and services from prison industries and will then sell the goods and services to selected markets. Petitioner asserts that the funds flowing to it from the sale of prison-made goods and services will allow it to work to enhance the virtue, purpose, and efficiency of prison industries and to assist and support the many other agencies and groups who do likewise. Petitioner also alleges that it will provide a mechanism by which funds and benefits flow from the private sector to Prison Industries and to Federal and State prison systems and that such funds and benefits *8 will enhance and expand the efforts and objectives of those Government units at no cost to the units and thus lessen the burden of Government to sustain the costs of such enhancement and expansion. Petitioner further asserts that it will contribute to generating an income for prison industries (by buying goods and services from prison industries) and that the profit from this income tends to reduce the cost the Government must bear to operate the prisons. Further, petitioner alleges that it will contribute to lessening the burden of Government by contributing to job creation (within and without the prison), decreasing imports, and increasing exports. Petitioner states that it would expect to successfully compete with imports to the United States and that it has selected the import market because it does not replace U.S. jobs and the reduction of imports will contribute to reducing the trade deficit. Petitioner asserts that it is positioned with the training and expertise to utilize the complexities of prison industries as a subcontractor and that its development as a supplier will result in contributing to the enhancement and expansion of prison industries. Petitioner describes *9 its 1987 and 1988 activities as including the following: 1. DEVELOPED policy and procedures with the world's largest corporation (General Motors) to purchase and use prison industry product via PUBLIC INDUSTRIES, Inc. for purpose of contributing to the expansion of prison industries and its purpose and objectivies [sic] related to education, training, and rehibilation [sic] of prisoners. Final implementation is currently being negotiated. 2. PROVIDED services, assistance, advice, consultation, etc. to prison industries to qualify them as a supplier of products for the private sector (automotive) relative to quality, price, capacity, delivery, international competition etc. * * * These services for the government are services which are required to obtain the involvement of the private sector for the enhancement of prison industries and services which the government has no expertise to perform in this specialized market (automotive). * * * 3. As president of PUBLIC INDUSTRIES I have spent many hours with General Motors Real Estate department, local and state government persons, UAW persons, etc. in the planning, site tours, fealibility [sic] study, etc. to *10 establish a community correction center based on the Factories With Walls Concept in part or whole as related to the plant closing. * * * 5. PUBLIC INDUSTRIES will act as a conduit for gifts of assets and machinery etc. from the private sector to prison industries for the purpose of enhancing the scope and purpose of prison industries's role in the education, training, and rehibilitation [sic] of prisoners. * * * The record does not reflect any supporting documents of such sales of prison industries goods to General Motors through petitioner. In a letter written on September 23, 1987, on behalf of petitioner to respondent, Jack C. Keene, Chief of Sales and Marketing for OPI Correctional Industries, an Ohio organization, states that it is his understanding that petitioner can and will assist prison industries in sales, advertising, sales promotion, new customer contacts and several other areas at no cost to the prison industries organization. Mr. Kenealy is a member of the National Task Force on Prisons and is on the marketing committee of the National Center for Innovation in Corrections. In February 1985, Mr. Kenealy attended a conference which was a part *11 of the efforts of then Chief Justice Warren E. Burger to expand on the prison industries concept in order to alleviate prison idleness and overcrowding. On December 28, 1984, petitioner applied for exemption as an organization described in section 501(c)(3) by filing a Form 1023. On August 30, 1988, respondent issued a final adverse determination concluding that petitioner did not qualify as a tax-exempt organization because it did not "lessen the burdens of Government" and was not operated exclusively for charitable purposes as described under section 501(c)(3). Under section 501(c)(3), an organization which is organized and operated exclusively for an exempt purpose (and meets the other requirements of the provision) qualifies as a tax-exempt organization. In order for an organization to be exempt from Federal income taxes under section 501(a) and (c)(3), it must satisfy both the organizational and operational tests of section 1.501(c)(3)-1(b) and (c), Income Tax Regs. If an organization fails to meet either test, it is not ex empt. Section 1.501(c)(3)-1(a)(1), Income Tax Regs. Respondent does not contend that petitioner fails to satisfy the organizational test; rather, he *12 focuses his argument on petitioner's failure to satisfy the operational test. Section 1.501(c)(3)-1(c)(1), Income Tax Regs., provides: (c) Operational test -- (1) Primary activities. An organization will be regarded as "operated exclusively" for one or more exempt purposes only if it engages primarily in activities which accomplish one or more of such exempt purposes specified in section 501(c)(3). An organization will not be so regarded if more than an insubstantial part of its activities is not in furtherance of an exempt purpose.
The word "exclusively" does not mean "solely" or "without exception." Church in Boston v. Commissioner, 71 T.C. 102, 107 (1978).An organization which engages in nonexempt activities can obtain and maintain exempt status so long as such activities are only incidental and insubstantial. Manning Association v. Commissioner, 93 T.C. 596, 603-604 (1989).Neither the Internal Revenue Code, the regulations, nor the case law provides a general definition of "insubstantial" for purposes of section 501(c)(3). This is a question of fact to be determined under the facts and circumstances of each particular case. Manning Association *13 v. Commissioner, supra.
The purpose toward which an activity is directed, rather than the nature of the activity itself, determines whether the operational test is satisfied. The fact that an organization's activity constitutes a trade or business does not, in itself, disqualify that organization under section 501(c)(3). Junaluska Assembly Housing, Inc. v. Commissioner, 86 T.C. 1114, 1121 (1986).See also sec. 1.501(c)(3)-1(e)(1), Income Tax Regs. The critical inquiry is whether petitioner's activity encompasses a substantial nonexempt purpose irrespective of the presence of other exempt purposes. See Manning Association v. Commissioner, supra at 604. Exempt purposes include charitable purposes. Sec. 1.501(c)(3)-1(d)(1)(i)(b), Income Tax Regs. The term "charitable" is used in section 501(c)(3) in its generally accepted legal sense and includes "lessening of the burdens of Government." Sec. 1.501(c)(3)-1(d)(2), Income Tax Regs. A determination as to whether an organization lessens the burdens of Government involves a two-part inquiry as to whether: (1) the activities the organization engages in are ones which a governmental unit considers to be its burden *14 and recognizes the organization as acting on its behalf, and (2) the organization's performance of these activities actually lessens the burden of Government. Columbia Park & Recreation Assn. v. Commissioner, 88 T.C. 1, 21 (1987), affd. without published opinion 838 F.2d 465 (4th Cir. 1988). Petitioner has the burden of proof that respondent's denial is erroneous. Rule 217(c)(2); P.L.L. Scholarship Fund v. Commissioner, 82 T.C. 196, 199 (1984).For the following reasons, we hold that petitioner has not satisfied its burden. Petitioner has not shown that any of its anticipated activities are considered to be a burden of government. In point of fact, Congress has specifically proscribed petitioner's proposed purchase of Prison Industries goods and resale to the public through legislation which forbids the sale of Prison Industries goods to the public in competition with the private sector. Title 18 U.S.C. section 4122(a) provides: (a) Federal Prison Industries shall determine in what manner and to what extent industrial operations shall be carried on in Federal penal and correctional institutions for the production of commodities for consumption in such institutions *15 or for sale to the departments or agencies of the United States, but not for sale to the public in competition with private enterprise.
Similarly, the Michigan Correctional Industries Act provides: Regulation of sale or disposition of inmate labor or products; exceptions. Sec. 6. Correctional industries products may be sold, exchanged, or purchased by institutions of this or any other state or political subdivision thereof, the federal government or agencies of the federal government or any organization that is a tax exempt organization under section 501(c)(3) of the internal revenue code. The labor of inmates shall not be sold, hired, leased, loaned, contracted for, or otherwise used for private or corporate profit or for any purpose other than the construction, maintenance, or operation of public works, ways, or property as directed by the governor. * * * [Mich. Stat. Ann. sec. 28.1540(6) (Callaghan 1986).]
Thus, it appears that neither the Federal Government nor the government of the State of Michigan, the State of petitioner's incorporation, views the sale of prison-made goods to the private sector as a proper governmental function. There are apparently *16 some States that do consider such activity a proper governmental function, e.g., Utah and Ohio. However, petitioner has not established any concrete relationship with either of those States, or with any other governmental unit having a similar policy, which might support the conclusion that petitioner was acting on their behalf either directly or by way of participation in implementing the effort of any such unit. It is the existence of such a relationship which distinguishesRev. Rul. 85-2, 1985-1 C.B. 178, Rev. Rul. 85-1, 1985-1 C.B. 178, and Rev. Rul. 70-583, 1970-2 C.B. 114, relied upon by petitioner. Cf. Industrial Aid for the Blind v. Commissioner, 73 T.C. 96, 101 (1979).In view of the foregoing, we hold that petitioner has not carried its burden of proof that the first prong of the test articulated in Columbia Park & Recreation Assn. v. Commissioner, supra, has been met. Such being the case, we need not address the issue of whether petitioner's activities actually lessens the burdens of Government although we note that the record herein falls far short of demonstrating that any such actual lessening would occur. We recognize that such legislative protectionism *17 in respect of the sale of prison-made goods has been criticized as constituting one of the largest barriers to improvements in correctional and penal systems. [2] But the implementation of the policy considerations underlying such criticism, i.e., whether protectionist legislation hinders the achievement of the goals of Federal and State prison industries, is a matter for the Federal and State legislatures, and not the judiciary. With respect to petitioner's other proposed activities, which include consultation services to the private sector on becoming more involved in the efforts of prison industries, rehabilitation and training of inmates, and reduction of unemployment and the trade deficit, we likewise hold that petitioner has *18 not carried its burden of proof. The record does not contain any meaningful explanation of how these proposed activities would be carried out, much less how they will lessen any existing burdens of Government, or otherwise further an exempt purpose. See B.S.W. Group, Inc. v. Commissioner, 70 T.C. 352, 359 (1978).The mere fact that such activities might improve the general economic well-being of the Nation or a State or reduce any adverse impact from the failure of Government to carry out such activities is not enough. Columbia Park & Recreation Assn. v. Commissioner, supra.
In short, we are unable, on the basis of the administrative record, to conclude that petitioner's proposed activities go beyond those carried on commercially by purchasing or sales representatives or brokers or business consulting organizations operating in the private sector. The fact that the focus of those activities is on rendering assistance to prison inmates or prison authorities, even on a cost-free basis, is not enough to support an exemption for petitioner under section 501(c)(3). Federation Pharmacy Services, Inc. v. Commissioner, 72 T.C. 687 (1979), affd. 625 F.2d 804 (8th Cir. *19 1980). We hold that respondent's denial of an exemption to petitioner under section 501(c)(3) should be sustained. Our conclusion does not preclude petitioner from submitting a new application for tax-exempt status and supplying a more specific and detailed explanation of its activities and how they will further an exempt purpose, consistent with the views expressed herein. See Church in Boston v. Commissioner, 71 T.C. at 108; Houston Lawyer Referral Service v. Commissioner, 69 T.C. 570, 577-578 (1978). For the foregoing reasons, Decision will be entered for the respondent. Footnotes
1. All statutory references are to the Internal Revenue Code as amended and in effect for the year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.↩
2. See, e.g., Remarks of Former Chief Justice Warren E. Burger↩ at the National Conference on "'Factories with Fences': The Prison Industries Approach to Correctional Dilemmas" sponsored by the George Washington University and the Brookings Institution in Washington, D.C., on June 18, 1984.