114 T.C. No. 31

UNITED STATES TAX COURT

QUALITY AUDITING COMPANY, INC., Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 8794-99X.                    Filed June 19, 2000.

P is a nonprofit corporation organized to audit
structural steel fabricators pursuant to a quality
certification program administered by the American Institute
of Steel Construction, Inc. (AISC).  AISC is likewise a
nonprofit organization and is exempt from Federal taxation
under sec. 501(c)(6), I.R.C.  As its primary activity, P
inspects the quality control procedures used in facilities
of fabricators applying to AISC for certification.  P
evaluates whether such procedures are in compliance with the
standards set forth in the AISC program.  The certification
program was established by AISC at the request of public and
private owners and developers who desired a reliable method
for selecting competent fabricators from among those who
submit bids for the steel work component of a construction
project.

P seeks tax-exempt status as an organization described
in sec. 501(c)(3), I.R.C., on the grounds that P is operated
exclusively for the charitable purposes of lessening the
burdens of Government and encouraging safe construction for
the benefit of the general public.

Held:  P furthers private interests and therefore is not operated exclusively for exempt charitable purposes. Consequently, P is not entitled to exemption from income taxation under sec. 501(a), I.R.C., as an organization described in sec. 501(c)(3), I.R.C.

James A. Nitsche, for petitioner.

Joan Ronder Domike, for respondent.


OPINION

NIMS, Judge:  Respondent determined that petitioner Quality Auditing Company, Inc., does not qualify for exemption from Federal income taxation under section 501(a) as an organization meeting the requirements of section 501(c)(3).  Having exhausted its administrative remedies, petitioner challenged respondent's determination by timely invoking the jurisdiction of this Court for a declaratory judgment pursuant to section 7428(a).  The case was submitted for decision under Rule 122 upon the stipulated administrative record.  For purposes of this proceeding, the facts and representations contained in the administrative record are accepted as true, see Rule 217(b), and are incorporated herein by this reference.  The issue for decision is whether petitioner is operated exclusively for charitable purposes within the meaning of section 501(c)(3).

Unless otherwise indicated, all section references are to sections of the Internal Revenue Code, and all Rule references are to the Tax Court Rules of Practice and Procedure.

## Background

Petitioner, a nonprofit corporation with a principal place of business in Bristol, Virginia, at the time of filing its petition, was formed under the laws of Virginia on April 7, 1995. Developments and concerns within the structural steel fabrication industry, and particularly the response thereto by the American Institute of Steel Construction, Inc. (AISC), led to petitioner's genesis. AISC is a nonprofit organization exempt from Federal income taxation pursuant to section 501(c)(6). Since its founding in 1921, AISC has been engaged primarily in the creation of standardized engineering codes and specifications for use in the fabrication and construction of steel-framed buildings and bridges.

During the 1960's, a number of governmental agencies and private industrial owners and developers approached AISC and requested that it develop a certification program for structural steel fabricators. As technological advances had increased both the predominance and the complexity of steel's role in commercial and residential structures, a growing concern over potential differences in quality had arisen among entities attempting to select contractors for this component of a building project. Yet few owners and developers had sufficient expertise, time, or

funds to adequately investigate the fabricators submitting project bids.  AISC undertook to create a program which would afford the requested quality assurances.

Working in collaboration with engineers, architects, contractors, and other industry participants (including governmental agencies), AISC developed and trademarked the AISC Quality Certification Program.  This certification program incorporates codes, standards, and specifications for particular aspects of the fabricating process developed by, among others, the American Welding Society, the Steel Structures Painting Council, the American Society for Testing Materials, the Bolting Council, and AISC.  The program is designed to verify that fabricators have in place a quality control system that will assure compliance with such construction standards, as well as with contract requirements.  Ongoing revision and upgrading of the program track changes and advancements within the industry.

The certification program operates in the following manner. Fabricators desiring certification, often because the owner or developer of a project conditions bid awards thereon, submit an application and appropriate fee to AISC.  The fees so charged are determined in accordance with a schedule set by AISC and are based upon the fabricator's status as a member or nonmember of AISC, the type of certification sought, and the number of employees at the facility.  The program is open to all

fabricators, regardless of AISC membership, but the fee is less for members also responsible for AISC dues. The following four types or categories of certification are available: Conventional steel building structures, simple steel bridges, complex steel building structures, and major steel bridges. A paint endorsement is also offered. Fees for a first-time audit range from $3,200 to $6,900.

AISC then contracts with and pays for an independent entity to perform the actual audit investigation of the fabricator's facility. The auditor evaluates the fabricator's quality control procedures to determine whether such procedures adequately test for and ensure compliance with the industry specifications incorporated in the AISC program. No particular structure, project, or product is certified; rather, the construction process itself is examined. Following the audit, the auditor communicates his or her findings to the fabricator and recommends to AISC whether certification should be awarded. Upon receipt of a positive recommendation from the auditor, AISC forwards to the fabricator documentation reflecting AISC certified status. If the auditor does not believe certification warranted, the fabricator may choose to be reevaluated after corrective actions have been implemented. The specific report pertaining to a given audit is not disseminated to the public, but AISC publishes the names of certified companies.

In so administering the certification program, AISC initially contracted with Abstect, a private, for-profit company, to conduct the facility audits.  Problems with this arrangement developed, however, because a profit-driven enterprise was unwilling to reinvest a sufficient portion of the fees charged to achieve the level of auditor training and audit consistency necessary for a uniform, reliable certification program.  AISC therefore provided the startup capital to establish petitioner as an independent, nonprofit corporation.  Petitioner's articles of incorporation state that its purpose is "To conduct quality certification and inspection programs which meet the requirements of private and public standards setting bodies and governmental agencies".  Substantially all of petitioner's time and resources are dedicated to performing the quality audit function, and no other entities presently furnish this service.

Petitioner is governed by a board of directors consisting of the sitting chairman of AISC; the sitting chairman of AISC's Committee on Fabricating Operations and Standards; petitioner's president and CEO; and two elected members.  Petitioner operates by hiring and training independent contractors to inspect and audit the facilities of fabricators applying to AISC for certification.  These auditors are paid by petitioner $400 per audit day plus expenses, which include airfare, lodging, transportation, and telecommunications.  Petitioner also pays

royalties to AISC for use of its trademarked certification program. Petitioner's income is derived solely from the fees charged AISC for conducting the quality audits. These fees are determined annually by petitioner's board based upon an estimate of the costs, expenses, and overhead associated with providing the auditing service. Petitioner's stated intent is to set fees at a level which approximates actual cost. The request for tax-exemption submitted by petitioner to respondent estimated an excess (loss) of revenue over expenses for the years 1995, 1996, and 1997 of ($28,350), $25,500, and $103,300, respectively.

The majority of steel structures in the United States are built without imposing a certification prerequisite on fabricators. However, the AISC certification program has increasingly become recognized as furthering structural integrity and quality within the steel fabrication industry. Numerous private and public owners, developers, and contractors, including the Army Corps of Engineers and 38 to 40 State highway departments, now require AISC certification for bridges and other metal work. To promote such use of the program, AISC solicits owners and developers to require certification of fabricators submitting bids. The following is representative of a communication sent by AISC for this purpose:

> Congratulations on reaching the bid stage of the new
> Cleveland Stadium. We understand this is a complex
> project, requiring skilled and experienced construction
> contractors. AISC, the non-profit association

responsible for the Specification for Design and Fabrication of Structural Steel for Buildings for over 75 years, offers a quality certification intended to make the task of selecting qualified bidders more reliable.  The AISC Quality Certification Program is internationally recognized as a leader in ensuring that steel fabricators have the equipment, personnel and procedures to handle specific types of projects.  By requiring an AISC Quality Certified fabricator, you will join a growing list of designers and owners who have elected to use the program, including the U.S. Army Corps of Engineers, the Navy Facilities Command and 40 states.  Currently, more than 390 shops, representing 327 companies in the United States, Canada, Japan and Korea are certified--with more being added each month.

Though some specifiers have expressed concern that requiring a Quality Certified fabricator will raise project costs, rest assured that this is not the case. The Program is administered by fabricators, for fabricators with an annual fee to a fabricator of usually less than $5,000.  This fee is much less than comparable programs in other industries.  The fee funds the cost of administering the program and performing audits.  The Program relies on the use of prevailing industry standards so there are no implementation costs associated with the program and the audits often provide a cost benefit for fabricators since they not only review a company's existing quality procedures, but also help to inform a fabricator about the latest industry issues and trends.  Many program participants have reported that their procedures and practices have greatly improved under the impetus of Quality Certification audits.

We therefore recommend that project specifications require fabricators bidding on a project be certified and that contracts be awarded to fabricators that are certified prior to submitting their bid.  The AISC Quality Certification Program exists to provide assurances to construction team members such as yourself that suppliers are capable of performing according to your specification.  We hope you will let us help you with your work by awarding the project to currently certified fabricators.

The Cleveland stadium is a highly complex and visible project.  We recommend the following language be inserted n [sic] your structural steel specification:

> "The structural steel fabricator shall be certified at the time of bid in the AISC Quality Certification Program in the Complex Steel Structure Category with a Sophisticated Paint Endorsement.  A copy of the certificate shall be submitted with the bid documents."

If you'd like more information on the Certification Program, please feel free to call * * *

Petitioner's application for exemption under section 501(c)(3), for its role in the above-described quality certification endeavor, was received by the Internal Revenue Service on August 2, 1995.  On February 11, 1999, respondent issued the final adverse ruling which is the subject of this litigation.

## Discussion

## I.  General Rules

Section 501(a) exempts from Federal income taxation organizations described in section 501(c).  Among the organizations so described are those set forth in section 501(c)(3):

> Corporations * * * organized and operated exclusively for religious, charitable, scientific, testing for public safety, literary, or educational purposes, or to foster national or international amateur sports competition * * * , or for the prevention of cruelty to children or animals, no part of the net earnings of which inures to the benefit of any private shareholder or individual * * *

In order to be exempt under section 501(c)(3), an organization must be both organized exclusively for one or more of the exempt purposes specified in the section, known as the organizational test, and operated exclusively for such purposes, known as the operational test.  See sec. 1.501(c)(3)-1(a)(1), Income Tax Regs.  Failure to satisfy either test forecloses a section 501(c)(3) exemption.  See id.

In application of the organizational and operational tests, "exclusively" does not mean "'solely'" or "'absolutely without exception'".  Nationalist Movement v. Commissioner, 102 T.C. 558, 576 (1994) (quoting Church in Boston v. Commissioner, 71 T.C. 102, 107 (1978)), affd. 37 F.3d 216 (5th Cir. 1994); see also Copyright Clearance Ctr., Inc. v. Commissioner, 79 T.C. 793, 803-804 (1982).  Nonetheless, the presence of a single nonexempt purpose, if substantial in nature, precludes exempt status, regardless of the number or importance of truly exempt purposes. See Better Bus. Bureau v. United States, 326 U.S. 279, 283 (1945); Redlands Surgical Servs. v. Commissioner, 113 T.C. 47, 71-72 (1999); Nationalist Movement v. Commissioner, supra at 576; American Campaign Academy v. Commissioner, 92 T.C. 1053, 1065 (1989).

To satisfy the exclusivity requirement as it pertains to the organizational test, the entity's articles of organization must limit its purposes to those which are exempt and must not

expressly empower it to engage, except in insubstantial part, in activities not in furtherance of exempt purposes. See sec. 1.501(c)(3)-1(b)(1)(i)(a) and (b), Income Tax Regs.

With respect to the operational test:

> An organization will be regarded as "operated exclusively" for one or more exempt purposes only if it engages primarily in activities which accomplish one or more of such exempt purposes specified in section 501(c)(3). An organization will not be so regarded if more than an insubstantial part of its activities is not in furtherance of an exempt purpose. [Sec. 1.501(c)(3)-1(c)(1), Income Tax Regs.]

Additionally, although an organization may be engaged only in a single activity directed toward multiple purposes, both exempt and nonexempt, failure to satisfy the operational test will result if any nonexempt purpose is substantial. See Redlands Surgical Servs. v. Commissioner, supra at 71; Copyright Clearance Ctr., Inc. v. Commissioner, supra at 803-804.

Exempt purposes, in turn, are those specified in section 501(c)(3), such as religious, charitable, scientific, and educational. See sec. 1.501(c)(3)-1(d)(1)(i), Income Tax Regs. Charitable is further defined as follows:

> The term "charitable" is used in section 501(c)(3) in its generally accepted legal sense and is, therefore, not to be construed as limited by the separate enumeration in section 501(c)(3) of other tax-exempt purposes which may fall within the broad outlines of "charity" as developed by judicial decisions. Such terms include: Relief of the poor and distressed or of the underprivileged; advancement of religion; advancement of education or science; erection or maintenance of public buildings, monuments, or works; lessening of the burdens of Government; and promotion

of social welfare by organizations designed to accomplish any of the above purposes, or (i) to lessen neighborhood tensions; (ii) to eliminate prejudice and discrimination; (iii) to defend human and civil rights secured by law; or (iv) to combat community deterioration and juvenile delinquency. * * * [Sec. 1.501(c)(3)-1(d)(2), Income Tax Regs.]

However, regardless of the presence of what might otherwise be proper exempt purposes, an explicit exception to section 501(c)(3) status exists in that:

An organization is not organized or operated exclusively for one or more of the purposes specified in * * * [section 501(c)(3)] unless it serves a public rather than a private interest. Thus, * * * it is necessary for an organization to establish that it is not organized or operated for the benefit of private interests * * * [Sec. 1.501(c)(3)-1(d)(1)(ii), Income Tax Regs.]

Private interests within the meaning of this rule include not only related persons and insiders but also unrelated and disinterested private parties. See id.; American Campaign Academy v. Commissioner, supra at 1068-1069. In other words, if an organization benefits private interests, it will be deemed to further a nonexempt purpose. See American Campaign Academy v. Commissioner, supra at 1066. The organization will thereby be prevented from operating primarily for exempt purposes "absent a showing that no more than an insubstantial part of its activities further the private interests or any other nonexempt purposes." Id.

The burden of proof rests on petitioner to demonstrate, based on materials in the administrative record, that it is

organized and operated exclusively for exempt purposes, not benefiting private interests more than incidentally.  See Rule 217(c)(4)(A); <u>Redlands Surgical Servs. v. Commissioner</u>, <u>supra</u> at 72; <u>American Campaign Academy v. Commissioner</u>, <u>supra</u> at 1063-1064.

## II.  Contentions of the Parties

Petitioner contends that it satisfies the requirements of section 501(c)(3) for exemption from Federal taxation as a charitable organization.  Petitioner maintains that it is organized and operated exclusively for charitable purposes, that no part of its net earnings inures to the benefit of private individuals, and that it serves public rather than private interests.  According to petitioner, its purpose and activities qualify as charitable in that quality auditing of steel fabrication firms both lessens the burdens of Government and encourages the safe construction of buildings and bridges for the benefit of the general public.

Conversely, respondent asserts that petitioner is not entitled to exemption from taxation under sections 501(a) and (c)(3).  Respondent concedes that petitioner is organized exclusively for exempt purposes and that no part of its net earnings inures to the benefit of proscribed private individuals.  However, it is respondent's position that petitioner's inspection activity neither lessens the burdens of Government nor confers

upon the general public any benefit which is not merely incidental to petitioner's furthering of the private interests of AISC and firms within the steel industry.

We conclude, for the reasons explained below, that petitioner has failed to establish that it qualifies for exemption from tax as a charitable organization within the meaning of section 501(c)(3).

III.  Application

The question of whether petitioner is entitled to tax-exempt status as a section 501(c)(3) organization turns here upon whether petitioner is operated exclusively for exempt purposes. Petitioner's primary activity consists of performing audits of steel fabricators who have applied to AISC for quality certification.  Petitioner contends that, in so functioning, it operates exclusively for the charitable purposes of lessening the burdens of Government and encouraging safe construction for the benefit of the general public.  We examine each of these potential grounds for exemption.

A.  Lessening the Burdens of Government

An organization can be classified as having the charitable purpose of lessening the burdens of government only if two criteria are satisfied.  See Columbia Park & Recreation Association v. Commissioner, 88 T.C. 1, 21 & n.45 (1987), affd. without published opinion 838 F.2d 465 (4th Cir. 1988);

University Med. Resident Servs., P.C. v. Commissioner, T.C. Memo. 1996-251; Public Indus., Inc. v. Commissioner, T.C. Memo. 1991-3. First, the activities engaged in by the organization must be those which a governmental unit considers to be its burden. See Columbia Park & Recreation Association v. Commissioner, supra at 21 & n.45; University Med. Resident Servs., P.C. v. Commissioner, supra; Public Indus., Inc. v. Commissioner, supra. In other words, it must be shown that a governmental unit accepts as its responsibility the activities conducted by the organization and recognizes the organization as acting on the Government's behalf. See Columbia Park & Recreation Association v. Commissioner, supra at 21. Second, the organization's performance of the activities must actually lessen the burdens of Government. See Columbia Park & Recreation Association v. Commissioner, supra at 21 & n.45; University Med. Resident Servs., P.C. v. Commissioner, supra; Public Indus., Inc. v. Commissioner, supra. However, "The mere fact that such activities might improve the general economic well-being of the Nation or a State or reduce any adverse impact from the failure of Government to carry out such activities is not enough." Public Indus., Inc. v. Commissioner, supra.

Applying these criteria to the case at bar, we conclude that petitioner has failed to make the requisite showing for an exemption on the basis of lessening Government burdens. Petitioner's primary activity consists of performing quality

audits of steel fabricators.  Yet there is no indication in the record that governmental units consider it their burden to inspect or certify the quality control procedures in place in the facilities of private fabricators.  The quality inspection and certification activities here are not part of a legislated governmental program, are not the result of an express governmental delegation of function, and do not seek to enforce governmentally established standards or guidelines.  See Indiana Crop Improvement Association v. Commissioner, 76 T.C. 394 (1981) (relying on such factors to hold that a taxpayer's testing and certification of agricultural products lessened the burdens of Government); see also Professional Standards Review Org. v. Commissioner, 74 T.C. 240 (1980) (finding an entity authorized by statute to review utilization of Government-subsidized programs to lessen the burdens of Government).

Rather, the record reflects only that governmental agencies were among those who initially requested that AISC develop a certification program and who have since made use of the program in awarding bids.  Although such involvement shows a concern with obtaining high-quality steel work in public projects, it falls short of demonstrating that governmental units view a program for auditing steel fabricators as a Government responsibility and recognize petitioner as acting on their behalf.  The record is

likewise bereft of evidence that, in absence of the AISC program, governmental entities would have undertaken to develop a similar program or to conduct actual audit inspections.

Furthermore, to the extent that the existence of the AISC program and petitioner's role therein facilitate the Government in selecting qualified fabricators, an equivalent benefit is conferred upon private owners and developers. Private entities joined with public in requesting the AISC program and likewise utilize the program in awarding bids. If, as petitioner contends, it is operated to lessen the burdens of Government, it would follow that it is also operated to lessen the burdens on private parties. While the former is a charitable purpose, the latter is not, and the record offers no basis upon which to determine that the latter is merely incidental to the former. We thus cannot conclude that petitioner is operating exclusively for the charitable purpose of lessening the burdens of Government.

B.   Encouraging Safe Construction

We turn to the question of whether petitioner is operating exclusively for the charitable purpose of encouraging safe construction for the benefit of the general public. We acknowledge that furthering public safety is indeed a charitable objective. Moreover, we do not dispute that the AISC certification program and petitioner's audit activities promote increased structural integrity and safety in steel buildings and

bridges.  Nonetheless, we find that petitioner's activities also further private interests to a degree that is more than insubstantial.  See <u>Better Bus. Bureau v. United States</u>, 326 U.S. 279, 283 (1945).

Petitioner performs quality audits at the request of AISC, which in turn acts at the request of steel fabricators applying for certification.  Neither AISC nor the fabricators, however, are public entities.  As an organization exempt from taxation under section 501(c)(6), AISC is a business league or board of trade.  Such entities are defined as follows:

> A business league is an association of persons having some common business interest, the purpose of which is to promote such common interest and not to engage in a regular business of a kind ordinarily carried on for profit.  It is an organization of the same general class as a chamber of commerce or board of trade.  Thus, its activities should be directed to the improvement of business conditions of one or more lines of business * * * [Sec. 1.501(c)(6)-1, Income Tax Regs.]

Hence, AISC is classified as an organization which seeks the betterment of an industry, not the betterment of the general public.  Although AISC's actions are not profit-motivated and may have positive results for society at large, that does not transform AISC's purpose, and activities undertaken in furtherance thereof, from private to public.  As expressed by this Court:

> It is clear, however, that not all organizations which incidentally enhance the public good will be classified as "public" organizations within the meaning of section

501(c)(3).  One need only glance at the other types of organizations described in section 501(c) for examples of "nonpublic" organizations which often do much to enhance the public good * * *

We think it is significant that Congress enacted special exemption provisions for certain types of organizations which would be unable to meet the stricter section 501(c)(3) tests which require service to public interests rather than to private ones. * * * [American Campaign Academy v. Commissioner, 92 T.C. 1053, 1077-1078 (1989).]

Here, the development and administration of a quality certification program, at the request of and for the structural steel industry, would appear to be consistent with AISC's mission as a section 501(c)(6) organization.  AISC, in its solicitations to owners and developers, states that the program is "intended to make the task of selecting qualified bidders more reliable" and "exists to provide assurances to construction team members such as yourself that suppliers are capable of performing according to your specification."  The focus thus seems to be on aiding industry participants, with any benefit to the general public being merely secondary.  We note that safety is never mentioned in the solicitation, and having qualified bidders and suppliers would address a host of concerns distinct from that of ending up with a finished product that will not harm its users.  Increased nonconformities, delays, project cost overruns, reduced structure longevity, and frequent repair expenditures are among the problems that could flow from hiring fabricators with inadequate

quality control. Therefore, to the extent that petitioner serves AISC's interests in carrying out its section 501(c)(6) role of industry betterment, petitioner benefits a private interest.

The steel fabricators who request audits and whose facilities petitioner inspects are likewise private entities. Moreover, because these fabricators operate as commercial enterprises, we are constrained to assume that they largely apply for certification when to do so furthers their primary objective of making a profit. We doubt that firms would seek and pay to obtain certified status unless they believed the investment would prove lucrative in the future. They likely wish to pursue revenues from a contract requiring certification, or they see the certification process as a vehicle to increased work through an improved control process and reputation for quality. Thus, in auditing these fabricators, petitioner is once again furthering private interests.

Lastly, petitioner has failed to convince us that the private interests discussed above are insubstantial in comparison to the benefit reaped by the general public. The majority of steel structures built in the United States do not require certified fabricators. The certification process itself does not result in petitioner's inspecting or certifying the safety of any finished structure or product with which the public might come in contract. Rather, petitioner evaluates the internal quality

control procedures of private, for-profit steel fabricators, incident to a quality certification program administered by a nonpublic section 501(c)(6) entity and implemented at the request of steel industry participants.  Accordingly, we conclude that petitioner is operated to a substantial degree for the benefit of private interests, including those of AISC and members of the steel industry.  As furthering private interests constitutes a nonexempt purpose, petitioner has not established that it is operated exclusively for exempt charitable purposes.  We hold that petitioner is not entitled to exemption from taxation as a charitable organization described in section 501(c)(3).

To reflect the foregoing,

Decision will be entered

for respondent.