T.C. Memo. 2021-91

UNITED STATES TAX COURT

NEW WORLD INFRASTRUCTURE ORGANIZATION, Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 12457-17X.                    Filed July 20, 2021.

Scott Johnston (an officer), for petitioner.

Mark A. Weiner, Eugene Kim, and Patricia P. Wang, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

CARLUZZO, Chief Special Trial Judge:  In a final adverse determination

letter dated April 7, 2017, respondent denied petitioner's application to be exempt

from Federal income tax under section 501(a).[1]  According to petitioner, it is

_____

[1]Unless otherwise indicated, section references are to the Internal Revenue
(continued...)

[*2] entitled to exempt status because it is an organization described in section 501(c)(3); according to respondent, petitioner is not so described.

When the petition was filed, petitioner's principal office was in California.

FINDINGS OF FACT

I. Petitioner, The Pipe Man Corporation, and the Johnstons

According to petitioner, it is "a successor to a for-profit business that never made any profit". The reference to the "for-profit business" is to The Pipe Man Corp. (TPMC), a corporation owned by Scott Johnston and Pam Johnston. Scott Johnston is on the board of directors of TPMC and serves as its president. Pam Johnston is also on the board of directors of TPMC; she serves as its vice president. According to its articles of incorporation, TPMC was organized in order to develop a "Portable Pipe Manufacturing System * * * [as well as] an Arching Machine, utilized to reshape pipe * * * [to produce] corrugated metal pipe * * * in much larger sizes than have ever been produced before". TPMC focused its "business activities * * * on seeking capital." Because it was never able to do so, TPMC abandoned its efforts to develop and/or market any products before

---

[1](...continued)
Code of 1986, as amended and in effect for the relevant period. Rule references are to the Tax Court Rules of Practice and Procedure.

[*3] petitioner was organized. Before TPMC was incorporated, the Johnstons owned and operated a sales and engineering consulting business.

The Johnstons caused the incorporation of petitioner as a nonprofit corporation under the laws of Nevada on January 5, 2015. At all times relevant, they were petitioner's only officers and directors. Nothing in the record shows that petitioner adopted any bylaws or that petitioner is affiliated with any Government or public institution. When petitioner was organized, or shortly thereafter, TPMC granted petitioner permission to use TPMC's copyrighted materials and certain patents relating to the portable pipe manufacturing system and arching machine.

Petitioner's articles of incorporation provide: "It's [sic] purposes shall, at all times, conform to one or more of the following purposes: charitable, religious, educational, scientific, literary, testing for public safety, fostering national or international amateur sports competition, and preventing cruelty to children or animals."

II. Administrative Proceedings

A. Petitioner's Application for Exemption

On January 28, 2015, petitioner submitted to respondent Form 1023, Application for Recognition of Exemption Under Section 501(c)(3) of the Internal

[*4] Revenue Code, signed by Scott Johnston. Petitioner included a narrative description of its activities with the form. According to that description, petitioner's "ultimate purpose and core focus will be charitable, with * * * [its] main beneficiary being Federal, State and Local Government Agencies."

Petitioner explained its mission as follows:

During our first two years we consider our purpose to fit within the "Scientific" category, as prototype machinery must be built and tested before we can pursue our "Charitable" purposes. For the scientific endeavor, our research will result in encouraging Economic Development throughout the United States. It will save time, money and lessen the burden of government. The prototype machinery, after testing, will be placed into service making very large corrugated metal pipe. The pipes needed to make a Highway Overpass can be made and arched in less than one week. The cost of these pipes represent a fraction of the cost of traditional methods. Standardized design and installation methods will greatly reduce engineering requirements. This should result in more projects getting the green light, thus employing more workers. Work on these projects will be far less disruptive to the environment and local economies. Projects will be scheduled to take full advantage of the time savings. We would consider an ideal first test project to include working with the Federal Highway Administration or Federal Emergency Management Agency to build an actual Bridge, Overpass or Disaster Relief Structure. The results of this research and machinery developed will of course be dedicated to public purposes as required by our Articles of Incorporation. With this in mind, NWIO will retain ownership and control over any patents, copyrights, processes, etc., resulting from this research and further considers the name "New World Infrastructure Organization", and "NWIO" as it pertains to the future of this organization to be Trademarks and Servicemarks for this organization as appropriate.

**[*5]** Petitioner responded in the affirmative to the following question in the Form 1023: "Do you or will you publish, own, or have rights in music, literature, tapes, artworks, choreography, scientific discoveries, or other intellectual property?" The narrative description further clarified that petitioner "will retain ownership and control over any patents, copyrights, processes, etc., resulting from this research" and development.

According to the narrative description, after petitioner builds and tests the prototype machinery referenced above, and such machinery is ready for commercial use, it intends to fulfill its charitable purpose by working with governmental agencies, engineering firms, and businesses to reduce the cost of infrastructure projects to "as little as one fourth current costs". Petitioner stated an intention to sell the "large corrugated metal pipe" at fair market value to governmental agencies and private companies. Petitioner estimates that its cost to manufacture the finished product would be 30% of its fair market value.

B. Respondent's Request for Additional Information

In response to requests for additional information from respondent, the parties exchanged correspondence and information from March 11 through May 7, 2015.

**[*6]** C. <u>The Final Adverse Determination Letter</u>

As noted, respondent issued petitioner a final adverse determination letter dated April 7, 2017, denying petitioner's application. The determination letter stated in pertinent part:

> This is a final adverse determination that you do not qualify for exemption from Federal income tax under Internal Revenue Code (the "Code") section 501(a) as an organization described in Code section 501(c)(3). The adverse determination is made for the following reason(s): You are a successor organization to a for-profit business. You propose that your principal activity will involve the production and sale of pipes at market rates for construction projects. You have not demonstrated that you will be operated exclusively for charitable, scientific, or other exempt purposes set forth in section 501(c)(3) of the Internal Revenue Code. Specifically, you have not shown how your proposed activities will lessen the burdens of government or otherwise further charitable purposes. More than an insubstantial part of your activities was not in furtherance of an exempt purpose.

## OPINION

Section 7428(a)(1)(A) confers jurisdiction on the Court to make a declaration in a case of actual controversy involving a determination by the Commissioner with respect to the initial qualification or continuing qualification of an organization as an organization described in section 501(c)(3) which is exempt from tax under section 501(a).

The taxpayer bears the burden of proving that the Commissioner's determination in such situations is erroneous. See <u>Christian Manner Int'l, Inc. v.</u>

**[\*7]** <u>Commissioner</u>, 71 T.C. 661, 664-665 (1979).  The parties submitted this case without a trial, <u>see</u> Rule 122, and the evidence consists solely of the administrative record, <u>see</u> Rule 217(b)(2).[2]

Section 501(a) generally exempts from taxation an organization described in subsection (c).  Section 501(c)(3) describes a qualifying organization in relevant part to include "[c]orporations * * * organized and operated exclusively for religious, charitable, scientific, testing for public safety, literary, or educational purposes".  An organization that qualifies under section 501(c)(3) not only is exempt from Federal income tax but also may solicit and accept donations which are normally deductible by the donor.  <u>See</u> sec. 170(a), (c)(2).

Respondent determined that petitioner did not operate exclusively for exempt purposes (operational test).  As respondent sees it, "Scott and Pam Johnston formed petitioner as a Nevada nonprofit corporation to conduct the same activities which they had previously attempted to conduct in their closely held for-profit corporation, The Pipe Man Corporation."

Petitioner does not offer anything in opposition to respondent's point.  Nevertheless, according to petitioner, the development of the prototype machinery

---

[2]In response to the parties' motion to submit the case under Rule 122, the case was assigned for disposition pursuant to Rule 218(a).

[*8] will further a scientific purpose and ultimately "result in encouraging economic development throughout the United States." According to petitioner, after it builds and tests the prototype machinery and such machinery is ready for commercial use, it intends to fulfill its charitable purpose by working with governmental agencies, engineering firms, and businesses to reduce the cost of infrastructure projects to "as little as one fourth current costs", thereby "lessening the burdens of government".

The standard for tax-exempt status prescribed in section 501(c)(3) requires that an organization be "operated exclusively" for an exempt purpose. Section 1.501(c)(3)-1(c)(1), Income Tax Regs., describes the operational test as follows:

> (c) Operational test--(1) Primary activities. An organization will be regarded as operated exclusively for one or more exempt purposes only if it engages primarily in activities which accomplish one or more of such exempt purposes specified in section 501(c)(3). An organization will not be so regarded if more than an insubstantial part of its activities is not in furtherance of an exempt purpose.

In this regard the presence of a single substantial purpose that is not described in section 501(c)(3) precludes exemption from tax under section 501(a) regardless of the number or the importance of the purposes that are present and described in section 501(c)(3). See Better Bus. Bureau of Wash., D.C., Inc. v. United States, 326 U.S. 279, 283 (1945).

[*9]  "Under the operational test, the purpose towards which an organization's activities are directed, and not the nature of the activities themselves, is ultimately dispositive of the organization's right to be classified as a section 501(c)(3) organization exempt from tax under section 501(a)."  B.S.W. Grp., Inc. v. Commissioner, 70 T.C. 352, 356-357 (1978).  As the Court noted in Partners in Charity, Inc. v. Commissioner, 141 T.C. 151, 164 (2013):  "Even in a commercial, profit motivated context, such activities may be wholesome and commendable; but they will not support tax-exempt status unless they are undertaken to further an exempt purpose."

I.  Scientific Purpose

Section 501(c)(3) describes a qualifying organization in relevant part to include "[c]orporations * * * organized and operated exclusively for * * * scientific * * * purposes".  The regulations provide that the term "scientific" as used in section 501(c)(3) "includes the carrying on of scientific research in the public interest."  Sec. 1.501(c)(3)-1(d)(5)(i), Income Tax Regs.  Section 1.501(c)(3)-1(d)(5)(ii), Income Tax Regs., then provides:

> (ii) Scientific research does not include activities of a type ordinarily carried on as an incident to commercial or industrial operations, as, for example, the ordinary testing or inspection of materials or products or the designing or construction of equipment, buildings, etc.

**[*10]** Petitioner's intended activities to design and to construct prototype machinery are, as respondent points out, the type of activities excluded from the definition of scientific research by the above-quoted subdivision. Accordingly, these activities do not further scientific purposes for purposes of section 501.

II. Charitable Purpose

> The term charitable is used in section 501(c)(3) in its generally accepted legal sense and is, therefore, not to be construed as limited by the separate enumeration in section 501(c)(3) of other tax-exempt purposes which may fall within the broad outlines of charity as developed by judicial decisions. Such term includes: Relief of the poor and distressed or of the underprivileged; advancement of religion; advancement of education or science; erection or maintenance of public buildings, monuments, or works; lessening of the burdens of Government * * *

Sec. 1.501(c)(3)-1(d)(2), Income Tax Regs.

Petitioner contends it furthers the charitable purposes identified in the relevant regulation with respect to the "erection or maintenance of public buildings, monuments, or works * * * [and the] lessening of the burdens of Government". See id. According to petitioner, the large corrugated metal pipe it intends on producing "will dramatically reduce time, cost, environmental impact and disruption to local economies", ultimately lessening "the burdens of government."

[*11] Petitioner has not established that it intends on constructing or maintaining public buildings, monuments, or works. Instead, it appears as though petitioner proposes to manufacture and then sell large corrugated metal pipe to contractors for use in infrastructure projects such as roads and bridges. And, while petitioner has suggested on brief as well as in letters to respondent included in the administrative record that it would be willing to enter into an exclusivity agreement with the Government to sell its product at cost, it has not established through its bylaws or otherwise that it would in fact do so.

Furthermore, the administrative record does not establish that petitioner would lessen the Government's burden. See Quality Auditing Co. v. Commissioner, 114 T.C. 498, 507-508 (2000) (non-profit corporation performing quality audits of steel fabricators failed to show its activities lessened the burdens of Government because no evidence showed the Government considered the corporation's activities its burden).

III. Private Inurement

Section 1.501(c)(3)-1(d)(1)(ii), Income Tax Regs., provides that an organization is not operated exclusively for exempt purposes unless it is operated for the benefit of the public rather than for the benefit of a private interest. Petitioner must therefore establish that it is not organized or operated for the

[*12] benefit of private interests such as those of its founder.  See Basic Bible Church v. Commissioner, 74 T.C. 846 (1980), aff'd per curiam sub nom. Kile v. Commissioner, 739 F.2d 265 (7th Cir. 1984).

In short, petitioner appears to be a facade for TPMC.  See B.S.W. Grp., Inc. v. Commissioner, 70 T.C. at 358 (stating that the relevant consulting activities were "of the sort which * * * [were] ordinarily carried on by commercial ventures organized for profit").  As best we can tell from the administrative record, the Johnstons incorporated petitioner and thereafter filed for exemption under section 501(c)(3) to assist in soliciting tax deductible donations to secure the funding that TPMC was unable to obtain.  Petitioner and TPMC had substantially the same business purpose of developing machinery capable of producing large corrugated metal pipe for sale in infrastructure projects.  The Johnstons owned TPMC and served as its officers and directors.  Likewise, they served as the only officers, directors, and paid employees of petitioner.  Petitioner is owned and controlled exclusively by the Johnstons; consequently, the benefits relating to petitioner would inure to the Johnstons.  If only for that reason, petitioner fails to qualify as an exempt organization for purposes of section 501(c)(3).

It follows and we hold that petitioner does not qualify for tax exempt status under section 501(a).

[*13] To reflect the foregoing,

Decision will be entered for

respondent.